# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JACKSON/SCOTT/LETT, Minors.

UNPUBLISHED
April 28, 2015

No.  322881
Wayne Circuit Court
Family Division
LC No.  12-510570-NA

Before:  BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Respondent appeals as of right from the trial court's order terminating her parental rights to her children, JJ, DS, JFJ, and HL, pursuant to MCL 712A.19b(3)(b)(*i*) (physical injury), (c)(*i*) (conditions that led to the adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood child will be harmed if returned to the parent's home). We affirm.

The initial petition alleged, among other things, that one of the children was birthed into a toilet and that respondent left the baby in the toilet until EMS arrived, causing the child to suffer from hypothermia.  Respondent also admitted to using marijuana while pregnant with the same child, and that the child tested positive for marijuana at birth.  Respondent did not have suitable housing for the children, and they were not being provided enough food to eat.  The petition alleged that respondent's habitual marijuana use prevented her from providing proper care and custody for the children.

A treatment plan was developed, with various services provided to assist respondent in finding suitable housing and in dealing with her substance abuse issues.  Parenting classes and drug screening were set up, and services were to be provided to address respondent's emotional instability and income problems.  Initially, respondent was in partial compliance with the plan and supervised parenting visits went well.  However, respondent did not consistently provide drug screens and the screens she did provide almost always tested positive for marijuana.  The court ordered that a new substance abuse therapist be assigned because of the positive screens, but respondent failed thereafter to participate.  Although petitioner made referrals regarding housing, respondent failed to undertake to find housing that could accommodate both herself and her children.  In light of respondent's failure to substantially comply with her treatment plan, the court ordered that a petition to terminate her parental rights be filed.

As of the hearing on the petition, respondent had not secured suitable housing for her children and she continued to test positive for marijuana.  The children were doing well in their

placements and the foster parents all indicated a desire to adopt the children. The court concluded that the statutory grounds for termination had been met and that termination was in the best interests of the children.

Respondent first challenges the court's findings on the statutory grounds. We review for clear error "the court's decision that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses. *Id*.

To terminate parental rights, the petitioner bears the burden of showing that the allegations establish a statutory basis for termination by clear and convincing evidence. *In re Trejo Minors*, 462 Mich at 351, 355. The court is required to make findings of fact, state conclusions of law, and specify the statutory basis for the order. *Id*. at 355. The relevant statutory grounds for this case are the following:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The original petition for removal alleged that respondent lacked suitable housing, could not properly care for the children, and habitually used marijuana. Respondent admitted to these allegations. Although petitioner made referrals regarding housing, respondent continued to live with her mother throughout the proceedings. Those living arrangements could not accommodate respondent's children. There is no evidence in the record to suggest that respondent sought to secure suitable housing that would accommodate herself and her children.

Most importantly, respondent failed to make any progress regarding her habitual marijuana use, which the petition cited as an underlying factor in her failure to care for her children. Although respondent made some initial progress with her substance abuse issues, she ceased complying with drug screens by the September 2013 review hearing, and when she did screen, the tests were almost always positive for marijuana. Respondent attended some drug counseling, but her pattern of positive screens and failure to attend all screenings clearly shows that she failed to benefit from the services provided. Respondent also failed to follow up on future drug counseling referrals.

Respondent's continuing marijuana use and failure to secure suitable housing clearly demonstrated that the conditions that led to adjudication continued to exist and that respondent was unable to provide proper care and custody of her children. Therefore, the evidence before the trial court established grounds for termination under MCL 712A.19b(3)(c)(*i*) and (g).

Under MCL 712A.19b(3)(j), it is proper for the court to consider the "risk of *emotional harm*." *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). The record establishes that the children suffered emotional harm in that they fought over food, felt stealing or hiding food was the only way to secure nourishment, and that respondent would yell at and demean them. As respondent's drug use created the conditions in which she could not provide proper care and she failed to make any progress throughout the duration of the case, a sound evidentiary basis existed for the court to conclude that the children would suffer emotional harm if returned to the mother's home.

Because only one statutory ground need be proven, *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012),[1] the statutory grounds for termination were established.[2]

---

[1] Because only one ground for termination need be established, we do not consider whether termination was also warranted under MCL 712A.19b(3)(b)(*i*).

[2] Although respondent couches her argument here in the language of due process, Michigan law fully comports with these requirements and respondent has not shown that either her federal or state rights were violated. *In re B & J*, 279 Mich App 12, 23; 756 NW2d 234 (2008).

Respondent also argues that petitioner failed to provide adequate services. Generally, and before a court enters a dispositional order, petitioner is "required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005), citing MCL 712A.18f(1), (2), (4). Such a plan was put in place in this case. The root cause of the children's removal was respondent's drug use. The petition cited drug use as a factor in respondent's failure to provide proper care and custody for the children. Petitioner made reasonable efforts to address this issue by providing respondent with substance abuse counseling. Indeed, when the drug counselor assigned appeared to be having no impact because respondent continued to test positive for marijuana, the court ordered appointment of another counselor. Although two additional referrals were made for counseling, respondent claimed that the second counselor was too old, so she refused to cooperate, and she failed to follow through and make contact with the third referral. Petitioner also discussed the possibility of inpatient substance abuse therapy with respondent, but she declined. It was respondent and not petitioner who failed to address the drug issue. Respondent has not shown the services were inadequate or unreasonable in light of her failure to avail herself of the additional counseling opportunities. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (explaining that while petitioner has a responsibility to provide adequate services, "there exists a commensurate responsibility on the part of" the respondent to comply with and benefit from those services).

Respondent also argues that insufficient services were provided to assist her in securing suitable housing. However, petitioner presented testimony that it had provided respondent with housing referrals. Further, there was testimony that petitioner assisted respondent with Section 8 housing. The record reflects that it was respondent's choice to continue to live with her mother, where there was not enough room for her children, rather than procure her own appropriate accommodations. The trial court did not clearly err in finding that reasonable efforts and adequate services were made to reunify the family.

Finally, respondent argues that the termination was not in the best interests of the children. A court's decision that termination is in the child's best interests is reviewed for clear error. *In re Olive/Metts Minors*, 297 Mich App at 40. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). See also MCR 3.977(E)(4). Several factors may be considered by the court to determine the best interests of the child, including the child's bond to the parent, the parent's parenting ability, the advantages of a foster home over the parent's home, and the child's need for permanency, stability, and finality. *In re Olive/Metts Minors*, 297 Mich App at 41-42.

The court grounded its best-interest determination on the permanency needs of the children. The evidence supported this conclusion as respondent made no significant progress addressing her drug abuse issues and unsuitable housing, the two biggest barriers to reunification. Indeed, respondent did not progress to unsupervised visits in over a year of services. The children were young and beginning to question the transitory nature of their family life. Although all the children were doing well in foster homes, their situation revealed a need for permanency and the respondent's complete failure to move forward and show progress with her drug and housing issues provided a sufficient basis that she would not be able to address

-4-

these needs in a reasonable amount of time.  The children needed permanence, which their foster parents were willing to provide, and respondent could not.  See *In re Olive/Metts Minors*, 297 Mich App at 41-42.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad