# STATE OF MICHIGAN

# COURT OF APPEALS

In re C. J. W. GARNO, Minor.

UNPUBLISHED
May 26, 2015

No. 323830
Saginaw Circuit Court
Family Division
LC No. 13-033691-NA

Before: BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

Respondent father appeals as of right the trial court order terminating his parental rights to his minor son (born September 2009) pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and MCL 712A.19b(3)(g) (failure to provide proper care or custody).[1] We affirm.

## I. FACTUAL BACKGROUND

According to the petition, on December 6, 2012, the minor was a passenger in a car when respondent and the minor's mother went to purchase crack cocaine. The police stopped the car and they found a crack pipe and alcohol in the minor's diaper bag. The respondent then was arrested pursuant to an outstanding bench warrant. The minor was eventually placed with the paternal grandmother.

Initially, the respondent missed several hearings, in part because of his fear of being arrested pursuant to other outstanding bench warrants. Then, at the time of a review hearing on May 2013, respondent was incarcerated. Respondent then transferred to a halfway house called the "Tri-Cap" program in September 2013.

At a review hearing in December 2013, the foster-care worker testified that most services were provided to respondent through Tri-Cap, and he attended "My Team" meetings, which are group meetings that focus on strengths and barriers to reunification. Respondent attended visits with the minor, and exhibited a strong bond. Yet, the worker testified that even though she had

---

[1] The parental rights of the child's mother also were terminated. She is not a party to this appeal, so "respondent" will refer to the child's father.

-1-

reviewed the parent-agency treatment plan with respondent, he was not keeping in contact with her or following through with his required assignments.

It soon became apparent that respondent's stay at Tri-Cap was relatively turbulent. Although he arrived at the halfway house, he was discharged shortly thereafter. Respondent's attorney made an offer of proof that respondent was discharged because he made an unauthorized departure from work because his father-in-law broke his foot. However, when respondent returned Tri-Cap, he tested positive for cocaine. He also failed to keep in contact with the foster-care worker or report to her on the effect his substance abuse has on his son.

At the permanency planning hearing held in March 2014, the foster-care worker recommended a continued goal of reunification since the structure of Tri-Cap did not allow for respondent to demonstrate significant progress. The trial court concurred that reunification remained the goal, but warned that if substantial progress was not made at the next review hearing, the proceedings would move in a different direction.

At the next review hearing on May 28, 2014, it was revealed that another bench warrant had been issued for respondent.[2] As an apparent consequence, he did not appear at that hearing. Similarly, at the review hearing on June 4, 2014, respondent was not present, and his whereabouts were unknown. At the permanency planning hearing on July 9, 2014, respondent's whereabouts continued to be a mystery, as even his attorney revealed that he had not heard from respondent in quite some time. The foster-care worker also had not heard from respondent since April. However, the minor's mother testified that respondent called her daily.

The proceedings progressed to termination on August 28, 2014. Respondent testified that he currently was incarcerated for "absconding-probation violation" with respect to a possession of cocaine charge. He claimed that he successfully completed the Tri-Cap program on April 4, 2014. However, after completing the program, he failed to submit to urine screens and failed to provide timely proof of substance abuse treatment. His probation officer ordered him to return to Tri-Cap near the end of April 2014. While respondent initially complied, he then left the program after only a few days. Respondent testified that because of his departure, a bench warrant was issued for his arrest, and he was arrested on July 14, 2014. He explained that upon his release from jail, he again was supposed to return to Tri-Cap.

Respondent explained that he failed to visit the minor for several months because he had concerns about getting arrested. However, he also admitted that his mother let him visit the minor when he had a warrant out for his arrest, although he did not know if his mother knew about the warrant.

The foster-care worker testified that termination was in the minor's best interests because the child had been in foster care for 18 months and respondent had not shown any improvement in his parenting skills. She explained that the minor needed to be in a safe and stable

---

[2] According to respondent's explanation at the termination hearing, the bench warrant resulted because he was ordered to complete another stint in Tri-Cap, and he refused.

environment, which respondent could not provide at that time or in the near future. She further explained that respondent was referred to "Strong Families/Safe Children" upon his discharge from Tri-Cap to address parenting skills, but he did not attend. She also revealed that respondent had not cooperated with drug screens. Ultimately, the foster-care worker recommended termination rather than a guardianship because it was more permanent, the history of the case and respondent's behavior, and because of conflicts between paternal relatives and the child's mother.

The trial court found clear and convincing evidence of termination pursuant to MCL 712A.19b(3)(c)(i) and (g), and that termination was in the minor child's best interests. Respondent now appeals.

## II. STATUTORY GROUNDS

### A. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review the trial court's determination for clear error." *Id.* "A decision is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re B & J*, 279 Mich App 12, 17-18; 756 NW2d 234, 238 (2008) (quotation marks and citation omitted).

### B. ANALYSIS

MCL 712A.19b(3)(c)(*i*) provides for termination when:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

"This statutory ground exists when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App 701, 710; 846 NW2d 61, 66 (2014) (quotation marks and citation omitted).

As the trial court highlighted, these proceedings began because respondent was struggling with drug abuse, criminal activity, and an inability to provide a proper home for the minor. The minor was taken into care after respondent, who had previously tested positive for cocaine and morphine, was arrested pursuant to an outstanding warrant. The minor was in the car respondent was driving at the time of his arrest. At the time of the arrest, drug paraphernalia and alcohol were found in the minor's diaper bag. Respondent missed several hearings during the

proceedings either because he was in jail or because he was attempting to elude the police. He failed to keep in contact with DHS and he overall appeared uninterested in resolving the troublesome aspects of his life. Although he attended Tri-Cap, a halfway house, he was discharged from that program twice. He also tested positive for cocaine while at Tri-Cap, and failed to submit to further drug tests. At the time of the termination hearing, respondent was in jail because he absconded from Tri-Cap a second time. Respondent also admitted to avoiding visitation with his son because he was eluding capture.

In light of the foregoing, the trial court was not clearly erroneous to conclude that in the 18 months of these proceedings, the conditions that led to the adjudication remained and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. MCL 712A.19b(3)(c)(*i*).

Respondent, however, contends that the trial court erred in ordering termination because, pursuant to *In re Mason*, 486 Mich 142, 160; 782 NW2d 747 (2010), "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." Yet, the trial court did not rely on respondent's present inability to personally care for the minor. Rather, significant evidence of respondent's lack of progress was presented, irrespective of his current incarceration. He showed no sustained progress in committing to a drug free lifestyle. In fact, he tested positive for cocaine at the half-way house, and then declined further drug screens. His legal troubles also persisted, as he either was unwilling or unable to comply with law. He continually chose to violate the terms of his probation. He showed no effort to prioritize the needs of the minor, as he repeatedly absconded rather than engage in services or visit the minor. As the trial court found, because of respondent's choices, he "made himself unavailable to his child." Respondent had over 18 months to demonstrate that he was committed to rectifying the conditions that led to the adjudication and prioritizing the needs of his child. That he utterly failed to make any progress toward this goal supports the trial court's finding.[3]

We also are mindful of the minor's age, which was three years old at the beginning of these proceedings and almost five years old at the time of the termination hearing. Given his young age and needs, we find no clear error in the trial court's finding that there is no reasonable likelihood that these conditions will be rectified within a reasonable time. MCL 712A.19b(3)(c)(*i*). See *Matter of Dahms*, 187 Mich App 644, 647; 468 NW2d 315 (1991) (MCL 712A.19b(3)(c)(*i*) "indicates to us that the Legislature did not intend that children be left indefinitely in foster care, but rather that parental rights be terminated if the conditions leading to the proceedings could not be rectified within a reasonable time.").

Because "[i]t is only necessary for the DHS to establish by clear and convincing evidence the existence of one statutory ground to support the order for termination of parental rights[,]" *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012), we need not consider MCL 712A.19b(3)(g).

---

[3] Further, although respondent testified that he was confident he would have no trouble finding a job after jail, it does not appear that he had obtained such a position.

## III. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent next challenges the trial court's best-interests findings. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "We review for clear error . . . the court's decision regarding the child's best interest under MCL 712A.19b(5)." *Id.* (quotation marks and citation omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id.* at 41 (quotation marks, citation, and brackets omitted).

### B. ANALYSIS

MCL 712A.19b(5) provides that "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home[.]" *In re Olive/Metts Minors*, 297 Mich App at 41-42 (internal citations omitted). Furthermore, "once a statutory ground is established, a parent's interest in the care and custody of his or her child yields to the state's interest in the protection of the child." *In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009).

Respondent first contends that the trial court erred in its best-interests analysis because he had a strong bond with the minor. However, that is but one factor for the trial court to consider in its best-interests analysis. See *In re Olive/Metts Minors*, 297 Mich App at 41-42. There was significant evidence that respondent placed the minor in danger through exposing him to drug use and criminal activity, which remained unresolved after 18 months of proceedings. Respondent also contends that the trial court erred because, pursuant to *In re Mason*, 486 Mich at 164, the minor's placement with a paternal relative during respondent's incarceration weighed against termination. Respondent also contends that his plan was to place the child with the paternal grandmother, and a guardianship was preferable to termination.

However, unlike *In re Mason*, 486 Mich at 146-148, this is not a case where respondent was in jail for an unrelated event and made provisions to leave the minor with a person he perceived as a suitable caregiver. Rather, respondent and the mother—despite their extensive drug use—were purporting to care for the child despite the dangers such a situation posed. Respondent was arrested with the minor in the car, and drug paraphernalia and alcohol were located in the minor's diaper bag. It was not until petitioner intervened that the child was removed and placed with a more suitable caregiver. As the trial court found, even after a year of these proceedings, respondent was purportedly working toward reunification, not a guardianship. It was not until the termination hearing was looming that respondent suddenly claimed that guardianship was his plan for the minor.

Significantly, the trial court *did* consider the fact that the minor was placed with a relative, which weighs against termination, and the court even referenced *In re Olive/Metts*. See *In re Mason*, 486 Mich at 164; *In re Olive/Metts*, 297 Mich App at 43. After considering the minor's placement, the court ultimately concluded that termination still remained the best option. The court noted its concerns regarding the family conflicts and that the parental grandmother may not qualify for a guardianship subsidy. It also divulged its concern that, without the finality of termination, respondent might again obtain custody of the minor if something happened to the guardian. Respondent displayed an unwillingness to behave within the confines of the law. He repeatedly absconded from probation and attempted to evade capture. The court did not clearly err in finding that exposure to such a chaotic environment was not in the minor's best interest. The court properly found that the minor was in need of a stable environment, absent the turmoil of respondent's unpredictable and potentially dangerous presence. As the court explained, respondent has "shown too many times that while [he] may have good intentions, the good intentions are all [he has.]"

The minor was in need of permanency and finality, which was best achieved through termination in this case. *In re Olive/Metts*, 297 Mich App at 41-42; *In re Frey*, 297 Mich App at 249 ("[t]he child required a permanent, safe, and stable home, which" respondent was not "capable of providing."). See also *In re VanDalen*, 293 Mich App at 141 ("The evidence clearly supported the trial court's finding that termination was in the child['s] best interests" because "[c]ompelling evidence indicated that the children would not be safe in respondent['s] custody[.]"). The trial court properly focused on what was in the best interests of the minor. *In re Foster*, 285 Mich App at 635.

## IV. CONCLUSION

The trial court properly terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and found that termination was in the minor's best interests. We affirm.

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan