# STATE OF MICHIGAN

# COURT OF APPEALS

In re J. R. STEWART, Minor.

UNPUBLISHED
December 1, 2015

No. 326792
Macomb Circuit Court
Family Division
LC No. 2012-000420-NA

Before: SERVITTO, P.J., and WILDER and BOONSTRA, JJ.

PER CURIAM.

Respondent G. Stewart appeals as of right the trial court's order terminating his parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

The minor child was removed from the custody of her mother, A. Greene,[1] two days after the child's birth. Greene's parental rights to seven other children were previously terminated. Respondent was homeless, and his only income came from collecting and selling scrap metal. He owed several thousand dollars in child support for other children.

The child was placed with respondent's sister. Respondent consistently attended visitation, and behaved appropriately with the child. Respondent's homelessness and lack of a secure income were the principal barriers to reunification. Petitioner provided respondent with a list of low-income housing providers, but he did not contact any of them until nearly a year after the case began, and then contacted only two. Respondent maintained that he received sufficient income from his scrap metal sales and lawn care services, but he seldom provided documentation of the scrap metal payments, and he never provided documentation of his income from lawn services.

Respondent argues that the trial court erred in finding that statutory grounds for termination were established by clear and convincing evidence. We disagree.

In an action to terminate parental rights, the petitioner must prove by clear and convincing evidence that at least one statutory ground for termination in MCL 712A.19b(3)

---

[1] The trial court also terminated Greene's parental rights to the minor child, but she has not appealed that decision.

-1-

exists. MCR 3.977(A)(3) and (H)(3); *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). The trial court's decision is reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356. A finding is clearly erroneous when the reviewing court is left with the firm and definite conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). "[T]his Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005); MCR 2.613(C).

The trial court found that statutory grounds for termination were established pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide that termination is warranted under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

When this case was adjudicated, respondent was homeless and dependent on friends and family members who allowed him to stay in their homes on a temporary basis. He did not have a regular source of income. Throughout the proceedings, the caseworker discussed with him the importance of establishing suitable housing and a legal income. Early in the case, respondent's caseworker provided respondent with a list of low-income housing resources. Respondent did not avail himself of this information until November 2013, almost one year after the child was born and had been placed into care. More than a year later, respondent was on a waiting list for housing, but he had contacted only two providers and claimed that he did not contact others because they required employment. Although respondent continuously maintained that he had a reliable income through scrap metal sales and a lawn and snow removal business, he never inquired whether these income sources made him eligible for housing from the providers who required employment. Because of respondent's lack of diligence in searching for housing, he had not resolved the condition of homelessness despite having two years to do so.

Respondent also failed to establish a consistent and legal source of income. He only occasionally provided documentation of the cash proceeds he received in his scrap metal dealings, and never offered documentation of his earnings in his lawn service and snow removal business. At the time of the hearing, he was still "working" on obtaining a tax ID number for this business. Respondent had also accrued child support arrearages approaching $80,000. His delinquency in support payments dated back to the 1990s. Respondent's application for Social Security disability benefits was denied, although he hoped to prevail on appeal or on reapplication. He never submitted a budget reflecting the expenses he would incur for housing and other necessities if he were reunited with the child. In view of this evidence, the trial court did not clearly err in finding that respondent's financial plan was unrealistic. Respondent had a long history of financial insecurity, with no realistic or objective basis for believing that he could reverse this pattern within a reasonable time.

Because respondent's homelessness and income insecurity problems remained unresolved, and respondent had failed to make any substantial progress in addressing those matters after two years, the trial court did not clearly err in finding that the evidence supported termination under § 19b(3)(c)(*i*).

The substantial evidence of respondent's homelessness and marginal finances also supported termination under § 19b(3)(g). Respondent was in no position to provide a stable and suitable home for the child, and his longstanding child support delinquency forecast his future inability to financially support the child. Although respondent hoped to resolve these issues at some uncertain future time, there was no reasonable expectation that he would be able to do so within a reasonable period of time.

Petitioner also presented evidence that respondent did not understand children's developmental milestones, and that he did not actively engage with the child during visitation. Respondent argues that the caseworker testified favorably regarding his visitation with the child throughout these proceedings, but then gave adverse testimony only after the trial court approved the supplemental petition to terminate parental rights. Respondent's reliance on *In re B & J*, 279 Mich App 12; 756 NW2d 234 (2008), to argue that the latter testimony was improper is misplaced. In *In re B & J*, the trial court terminated the respondents' parental rights under § 19b(3)(g) because the respondents had been deported, which precluded them from providing proper care and custody for their children. This Court noted that petitioner had reported the respondents' illegal immigrant status, which led to their deportation, and held that termination under § 19b(3)(g) was improper because petitioner "intentionally set out to create that very ground for termination." *Id.* at 19. In this case, respondent does not identify any barrier to reunification that petitioner created. Respondent principally complains that the caseworker's adverse testimony at the termination hearing regarding his parenting skills should not have been accepted because the caseworker's prior reports were largely favorable. But that is an argument that is more properly directed at credibility.

Although the caseworker testified at dispositional review hearings that respondent generally behaved appropriately with the child, she did not provide any detailed testimony about how respondent used his visitation time at these review hearings. At the termination hearing, she testified that respondent usually held the child on his lap for a few minutes, but then sat her on the floor to play alone. He sometimes went to sleep when the child was sleeping. Respondent

admitted sleeping during visits, but qualified this by stating that he might have only appeared to be sleeping, and that he was a light sleeper. The trial court did not clearly err in giving greater weight to the caseworker's more detailed testimony at the termination hearing, than it gave to her summary statements at earlier review hearings. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). Further, the primary barriers to reunification were respondent's homelessness and lack of a suitable income, and petitioner did not create or cause either of those conditions. Rather, it made efforts to alleviate them, but respondent failed to take advantage of those efforts.

Respondent's failure to make and pursue realistic plans to rehabilitate himself also demonstrated that he lacked the capacity to provide safe and proper care for his child. After more than two years, respondent was still "working on" basic plans such as obtaining a tax ID for his business and getting on waiting lists for low-income housing. He failed to comply with his treatment plan requirements to provide documentation of his efforts to find employment and housing. He admitted that he had not read the plan since it was issued. He made only minimal efforts to apply for low-income housing. The plans he asserted were unrealistic, and he could not articulate how he would fulfill them. Accordingly, the evidence also supports termination of respondent's parental rights under § 19b(3)(j).

We reject respondent's argument that the trial court clearly erred in stating that respondent wanted the child to remain with his sister. Although respondent testified that he wanted to take care of his daughter and was not "pondering [sic] my child off on nobody," he also stated that "I would love for [the child] to stay with my sister" and "I don't mind my sister having my daughter." Accordingly, the trial court did not misstate respondent's testimony.

There is no merit to respondent's argument that termination was improper because petitioner failed to provide adequate services to help him achieve reunification. To preserve a challenge to the adequacy of reunification efforts, a respondent must object or indicate that the services provided were inadequate. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Respondent did not challenge the adequacy of petitioner's reunification services in the trial court. Accordingly, this issue is unpreserved and review is limited to plain error affecting respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

"When a child is removed from a parent's custody, the agency charged with the care of the child is required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). Thereafter, "[a trial] court is not required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the safe return of the child to the child's home." *In re Rood*, 483 Mich 73, 104; 763 NW2d 587 (2009) (citations and quotation marks omitted). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *Id.* at 89.

Respondent argues that petitioner failed to actively help him find housing and employment. He argues that providing him with a list of housing resources was not enough, and that petitioner's workers should have helped him contact housing providers, and should have referred him for employment assistance. The record discloses that petitioner provided services to address these matters, but respondent failed to avail himself of those services. While petitioner must "expend reasonable efforts to provide services to secure reunification, there exists a

commensurate responsibility on the part of [the parent] to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. Respondent could have, but did not, call more than two housing providers, or regularly call providers to inquire about availability. He could have, but did not, inquire whether the payments he received for scrap metal and whether income from his lawn service business could qualify as income to make him eligible for other housing opportunities. Respondent also could have, but did not, diligently obtain a tax ID number for his business, provide monthly documentation of his income, and prepare a budget. There is no indication that respondent ever requested additional assistance with employment. On the contrary, he told the caseworker that he was not looking for employment because of his child support arrearages. Respondent has not established a plain error related to the adequacy of services provided by petitioner.

Respondent lastly argues that termination of his parental rights was not in the child's best interests. Once a statutory ground for termination has been established, the court shall order termination of parental rights if it finds by a preponderance of the evidence "that termination of parental rights is in the child's best interests[.]" MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's best interest decision is also reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357.

The child was placed in a relative's care shortly after her birth. Two years later, respondent was no closer to resolving his homelessness and lack of income than he was when the case began. Respondent's belief that he would be able to resolve the barriers to reunification was based mostly on hope, not on any realistic plan or measurable efforts. Although respondent argues that the child could have been placed in a guardianship while he prepared himself to assume care, he was not making reasonable efforts to prepare himself and the child's aunt was willing to adopt the child to achieve permanency, but she was not willing to be appointed the child's guardian because of the uncertainty and potential for disruption it could cause in the future. No other relatives were willing to accept a guardianship. Considering the circumstances, the trial court did not clearly err in finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.


/s/ Deborah A. Servitto
/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra