Hsi Sheng (Michael) LIU, Petitioner,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Immigration and Naturalization Service, Respondents.

No. 93–1513.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 9, 1993.

Decided Jan. 6, 1994.

Stanley A. Krieger, Omaha, NE, argued, for petitioner.

C. William Lengacher, Dept. of Justice, Washington, DC, argued, for respondents.

Before BEAM and LAY, Circuit Judges, and BOGUE,* Senior District Judge.

BOGUE, Senior District Judge.

Hsi Sheng Liu (petitioner) seeks review of the Board of Immigration Appeals' affirmance of an immigration judge's denial of his application for suspension of deportation. In support of his appeal, petitioner argues that the immigration judge's decision to deny his request was flawed because the judge 1) misunderstood petitioner's financial situation; 2) failed to consider hardship to petitioner's minor son (a United States citizen) caused by separation should he be left behind; and 3) refused to allow petitioner to present all of his proffered witnesses. We affirm the decision to deny suspension of deportation, and reinstate the immigration judge's grant of six months for petitioner to voluntarily depart the country.

## BACKGROUND

Petitioner is a citizen of Taiwan, who entered the United States in 1982 on a student visa. He overstayed his visa after he stopped attending school, moved to Omaha, Nebraska, and started an Oriental restaurant. The business has been successful, and petitioner has purchased a home and made other investments.

Petitioner and his wife—who is also a deportable alien—have two sons, one a citizen of Taiwan and the other (Andy) a citizen of the United States by virtue of his birth in this country.

In late 1988, petitioner was charged with harboring illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(C). The charges (to which he pleaded guilty in early 1989) brought to the attention of Immigration and Naturalization Service (INS) the fact that he had overstayed his visa. INS initiated deportation proceedings against petitioner. He conceded deportability, but applied for suspension of deportation under 8 U.S.C. § 1254(a). Alternatively, he sought voluntary departure, pursuant to 8 U.S.C. § 1254(e). After a hearing in August 1989, the immigration judge (IJ) concluded that petitioner was deportable and denied his petition for suspension of deportation, based on his conclusion that the petitioner had not demonstrated "extreme hardship." The IJ did, however, grant petitioner's request for voluntary departure based on his implicit finding that petitioner had demonstrated good moral character. Petitioner appealed the IJ's denial of his request for suspension of deportation, and in February 1993 the Board of Immigration Appeals (BIA) affirmed.

## DISCUSSION

■ Under 8 U.S.C. § 1254(a), petitioner is eligible for suspension of deportation if he can prove that: 1) he has been physically present in the United States for seven continuous years immediately preceding his suspension application; 2) he has exhibited good moral character during those years; and 3) his deportation would cause him or his citizen child extreme hardship. The IJ found that the seven-year requirement was met, but did not directly reach the question of good moral character in the context of § 1254(a).[1] Rather, his conclusion was based on his finding that petitioner had not demonstrated extreme hardship, either to himself or his minor child, sufficient to warrant suspension.

■ We review the decision to deny petitioner's suspension of deportation application under the limited "abuse of discretion" standard. *Barragan–Verduzco v. U.S. I.N.S.*, 777 F.2d 424, 425 (8th Cir.1985). Under this

---

* The Hon. Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The IJ did, however, conclude that petitioner was eligible for voluntary departure, notwithstanding his 1989 conviction for harboring illegal aliens. Because § 1254(e) requires an alien seeking voluntary departure to demonstrate good moral character, the parties appear to treat the IJ's grant of voluntary departure as a finding of good moral character for purposes of 1254(e) and 1254(a). Because the IJ's decision on "good moral character" is unchallenged, and because our analysis hinges on the "extreme hardship" prong, we do not address the moral character issue here.

standard, petitioner may prevail if he can demonstrate that the agency failed to consider all the factors he presented as constituting extreme hardship. *Id.* With this scope of review in mind, we look to the merits of petitioner's arguments.

■ Petitioner first argues that the immigration judge could not have given meaningful consideration to his own claim of extreme hardship, because the IJ's decision misquoted the amount of petitioner's investment in the restaurant and misunderstood what selling price the restaurant could command. Regardless of these claimed errors, it is clear that if petitioner were to liquidate his assets, he would leave the country with substantial money—even if he is forced to sell the restaurant for less than its value as a going concern. The fact that the restaurant is worth more to him, as an ethnic entrepreneur, than it might be in the hands of another or as a liquidated business does not compel the Board to find extreme hardship. It is well settled that "[e]conomic loss alone is insufficient to sustain a finding of extreme hardship[.]" *Choe v. Immigration and Naturalization Service,* 597 F.2d 168, 170 (9th Cir.1979); *Barragan–Verduzco,* 777 F.2d at 426 (citing a similar statement from a BIA decision).

■ Next, petitioner contends that the hardship his citizen child Andy would suffer if he were to remain in the United States, separated from his parents, was not adequately considered below. We agree, as does the respondent, that separation of a family is an important factor for the Board to consider in determining whether extreme hardship has been demonstrated. However, the IJ's decision does not necessarily mandate that the family be separated. The IJ noted that Andy is below the age of discretion, and that it is his parents' decision whether to take him along or leave him in this country when and if they are deported. Petitioner has maintained throughout these proceedings that he believes he will leave Andy behind if both he and his wife are deported. As noted above, though, that decision rests solely with Andy's parents—and is not being imposed upon them by the government. The IJ's ruling took note of this fact,

as well as the fact that petitioner said that if separation were necessary he would leave Andy with relatives who are lawfully in the United States so that the child could take advantage of this country's educational system.

Given these circumstances, the immigration judge concluded that petitioner's deportation would not cause extreme hardship to Andy. We do not find that this conclusion was an abuse of discretion. The IJ had a complete picture of the hardship claimed by petitioner—particularly in light of Mr. Liu's claim that he would leave Andy behind—and he ruled that it did not amount to "extreme hardship" as to either petitioner or Andy. Although the IJ's findings regarding Andy's situation if left in the United States could be more detailed, it is clear from the transcript of his opinion that he gave serious consideration to that possibility.

■ Petitioner's final argument on appeal is that he was denied an opportunity to fully present his case to the immigration judge, as two witnesses were disallowed due to time constraints. In an offer of proof, petitioner asserted that the witnesses, one an employee at petitioner's restaurant and one a supplier of goods, would testify about petitioner's timely payment of bills, his fair treatment of employees, and his excellent reputation in the community. This testimony would have been largely duplicative of testimony that had already been received. Another employee and supplier did testify at the hearing about the same facts, and the immigration judge's refusal to hear the final two witnesses was not a due process violation. A person's right to present evidence is not absolute—but subject to the due process concept of reasonableness. Even petitioner recognizes that an immigration judge has discretion to limit testimony, as long as it does not deny him a full and fair hearing. In this case, the proffered testimony (in addition to being duplicative) related to petitioner's business success and his good moral character—items not directly relevant to the issue of whether he would suffer extreme hardship as a result of deportation. Given the circumstances, we find that the judge did not abuse

his discretion in limiting duplicative testimony on issues of only remote relevance to this controversy.

Even looking at petitioner's contentions as a whole, we do not find that the agency abused its discretion by denying his petition for suspension of deportation. The Supreme Court has recognized, in *Immigration and Naturalization Service v. Wang*, 450 U.S. 139, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981), that the law commits definition of the phrase "extreme hardship" in large part to the Attorney General or his delegates (immigration officials). The Court stated that "application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute." *Id.* Although petitioner notes that the immigration judge was reluctant to deny his application because of petitioner's good standing in and contributions to the community,[2] there are also policy considerations disfavoring immigration through other than the established procedures. *See, e.g. Id.* at 145, 101 S.Ct. at 1031 (disapproving the notion that "any foreign visitor who has fertility, money, and the ability to stay out of trouble for seven years can change his status from that of tourist or student to that of permanent resident without the inconvenience of immigration quotas. This strategy is not fair to those waiting for a quota."). This Court has stated that an immigration judge has "no duty to write an exegesis on every contention, [but must] consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Barragan–Verduzco*, 777 F.2d at 426 (citation omitted). With this in mind, we conclude that the decision below, read as a whole, adequately reflects the immigration judge's careful deliberation on this matter, after consideration of all the facts and arguments asserted by petitioner.

**CONCLUSION**

We affirm the decision below denying petitioner's application for suspension of deportation. We also reinstate the immigration judge's grant of a six month period of time in which petitioner can voluntarily depart the United States without deportation.[3] *See Barragan–Verduzco*, 777 F.2d at 427. Petitioner shall have six months from the filing of this opinion in which to voluntarily depart.

---

2.  In this regard, we note that there may be other avenues of relief for petitioner to get a more favorable decision relative to his desire to remain in this country. However, such relief—as well as immigration policy generally—is not within the ordinary purview of the courts.

3.  We note that the IJ, after consideration of all the evidence, allowed petitioner six months to voluntarily depart. Without elaboration, the BIA allowed only 30 days in its order affirming the IJ's decision. In light of the IJ's apparent consideration of the difficulty that will be occasioned by petitioner's need to liquidate or arrange for alternative management of his assets, we agree with the IJ that he should be accorded a longer time after final decision to voluntarily depart.