*In re* B AND J
*In re* E AND A

Docket Nos. 279461, 279462, and 279585. Submitted April 9, 2008, at
   Lansing. Decided May 13, 2008, at 9:05 a.m.

The Department of Human Services filed a petition in the Macomb
Circuit Court, Family Division, seeking to terminate the parental
rights of Hugo R. Diaz to his two minor children, B and J, and of
Rosita Orozco-Miranda to her two minor children, E and A, on the
basis that Hugo had allegedly sexually abused one of Rosita's
children and Rosita had failed to protect her children from Hugo's
alleged abuse. The petition did not, at that time, seek to terminate
the parental rights of Floricelda Orozco, Hugo's wife and Rosita's
mother, to B and J, although all four children were being held by
the petitioner in protective custody. The court, following a trial,
determined that the petitioner had failed to meet its burden of
establishing by clear and convincing evidence a statutory ground
for termination of Hugo's and Rosita's parental rights. The court,
however, concluded that there was sufficient evidence to support
taking jurisdiction over the children. The court ordered the
petitioner to prepare a parent-agency agreement, allow supervised
visitation, and provide services toward reunification. The peti-
tioner made meager attempts to provide services and, in fact,
reported Hugo, Floricelda, and Rosita, who were Guatemalan
citizens illegally residing in this country, to federal officials, who
eventually deported the respondents to Guatemala. The petitioner
thereafter filed supplemental petitions, seeking to terminate all
three respondents' parental rights to the children, three of whom
were born in the United States and are therefore United States
citizens. Following a dispositional hearing, the court, John C.
Foster, J., determined that the respondents had not deserted the
children and that the children would not be harmed if returned to
their parents. The court, however, did conclude that the require-
ments for termination of parental rights under MCL
712A.19b(3)(g) had been established because the respondents, who
had been deported, were unable to provide proper care and custody
for the children. The court further held that the children were in
need of permanency and that the termination of the respondents'

parental rights was not contrary to the children's best interests. All three respondents appealed from the court's orders, and their appeals were consolidated.

The Court of Appeals *held*:

1. The petitioner was not entitled to seek termination of the respondents' parental rights under MCL 712A.19b(3)(g) because the petitioner, itself, intentionally set out to create the very grounds for termination required by the statute. A state may not, consistent with due process, create the conditions that strip an individual of an interest protected under the Due Process Clause.

2. The trial court erred in holding that termination of the respondent's parental rights was not clearly contrary to the children's best interests.

3. The trial court erred by continuing to exercise jurisdiction over the children because doing so constituted an improper, de facto termination of the respondents' parental rights. This de facto termination, which was based on less than clear and convincing evidence of parental unfitness, violated the respondents' substantive due process rights. The orders terminating parental rights and assuming jurisdiction over the children must be reversed.

Reversed.

1. Parent and Child — Constitutional Law — Termination of Parental Rights.

A state may not, consistent with due process of law, create the conditions that will strip an individual of an interest protected under the Due Process Clause; a state may not set out with the overt purpose of virtually assuring the creation of the grounds for the termination of a person's parental rights.

2. Parent and Child — Termination of Parental Rights — Burden of Proof.

A state, in order to comply with the guarantees of substantive due process, must prove parental unfitness by at least clear and convincing evidence before terminating parental rights; a court, however, may exercise jurisdiction over a child when the court determines by a preponderance of the evidence that the child comes within the statutory requirements for the court to take jurisdiction (MCL 712A.2; MCL 712A.19b[3]).

*Eric J. Smith*, Prosecuting Attorney, *Robert Berlin*, Chief Appellate Attorney, and *Betsy B. Mellos*, Assistant Prosecuting Attorney, for the Department of Human Services.

*Maryanne Spryszak-Hanna* for Hugo R. Diaz.

*Larry O. Smith* for Floricelda Orozco.

*Janet L Szpond* for Rosita Orozco-Miranda.

Before: JANSEN, P.J., and DONOFRIO and DAVIS, JJ.

JANSEN, P.J. In these consolidated appeals, respondents Hugo Rene Diaz, also known as Hugo Rene Dias (Hugo), and Floricelda Orozco (Floricelda) appeal by right the family court's order terminating their parental rights to minor children B and J under MCL 712A.19b(3)(g). Respondent Rosita Orozco-Miranda (Rosita) also appeals by right the family court's order terminating her parental rights to minor children E and A under MCL 712A.19b(3)(g). We reverse.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Hugo and Floricelda were married and are the parents of B and J. Rosita—Floricelda's adult daughter— lived with Hugo and Floricelda with her two children, E and A. Hugo, Floricelda, and Rosita are Guatemalan citizens who were illegally residing in this country. B was born in Guatemala and is therefore also a Guatemalan citizen. The other three children were born in the United States. All speak Spanish as their primary language.

In 2005, petitioner Department of Human Services investigated an allegation that Hugo had sexually abused Rosita's children. However, the allegation was never substantiated. The following year, petitioner again investigated alleged abuse by Hugo. The children were removed from the home in July 2006. Petitioner filed petitions seeking to terminate Hugo's and Rosita's parental rights. The petitions alleged that Hugo had

sexually abused one of Rosita's children and that Rosita had failed to protect her children from Hugo's abuse. Petitioner did not seek at that time to terminate Floricelda's parental rights, but it did seek to continue the children in protective custody.

Preliminary hearings were held and the petitions were authorized. The family court continued temporary protective custody of the children.

A combined trial concerning the parental rights of Hugo and Rosita was held in late 2006. On the final day of trial, the family court found that petitioner had failed to meet its burden of establishing statutory grounds for termination of Hugo's and Rosita's parental rights by clear and convincing evidence. However, the court concluded that there was sufficient evidence to take jurisdiction over the children.[1] The court ordered petitioner to prepare a parent-agency agreement, to allow supervised visitation, and to provide services toward reunification.

Petitioner made meager attempts to provide services and made little effort to locate Spanish-speaking assistance for respondents. Petitioner also failed to produce the children for at least two scheduled visits with respondents following the court's order. Before these issues could be remedied, however, respondents were detained by United States Immigration and Customs Enforcement (ICE) officials[2] and deported to Guatemala. It is evident from the record that petitioner, itself, reported respondents to ICE.

---

[1] It is not clear exactly why the court took jurisdiction over the children. The court's adjudicative ruling on the final day of trial could not be transcribed because of technological difficulties. Nonetheless, it is clear that the court took jurisdiction over all four children, and an order to this effect is contained in the lower-court file.

[2] The investigative and law-enforcement functions of the former Immigration and Naturalization Service (INS) have now been transferred to ICE.

At a subsequent hearing in January 2007, the family court observed that such conduct by petitioner was in bad faith and "morally repugnant." The court observed that petitioner had been charged with providing services toward reunification, that respondents had fully and actively participated in the proceedings, and that respondents had attempted to visit the children despite petitioner's failures. Nonetheless, the court noted that respondents were in the country illegally and therefore subject to deportation.

A permanency planning hearing was held in March 2007, at which time petitioner noted that it would again seek to terminate parental rights. Thereafter, petitioner filed supplemental petitions seeking termination of parental rights with respect to all three respondents under MCL 712A.19b(3)(a)(ii), (g), and (j).

In late June 2007, a new dispositional hearing was held concerning the parental rights of all three respondents. A caseworker from Lutheran Social Services testified that she had called the Guatemalan embassy and had performed an Internet search for possible services in Guatemala. But she testified that she had been unable to find any services for respondents in their native country. The caseworker also testified that she was unable to locate respondents, and testified that respondents had made no attempt to contact petitioner. It was suggested at the hearing that B—the oldest of the four children—might know how to contact respondents in Guatemala. Incredibly, however, the caseworker testified that she had never asked B how to contact respondents because she had not wanted to upset him by asking him about his family. The caseworker confirmed that she believed that it had been petitioner's intention all along to have respondents deported.

At the conclusion of the hearing, the family court noted that the parent-agency agreement had been unrealistic and that petitioner should have attempted to provide greater services for the family. The court found that the requirements for termination under § 19b(3)(a)(*ii*) had not been established with respect to any of the respondents, reasoning that respondents' involuntary deportation was not a desertion of the children. The court also found that the requirements for termination under § 19b(3)(j) had not been established with respect to any of the respondents because petitioner had failed to prove by clear and convincing evidence that the children would likely be harmed if returned to their parents. However, the court concluded that the requirements for termination under § 19b(3)(g) had been sufficiently established with respect to all three respondents because respondents, who had been deported, were unable to provide proper care and custody for the children. The court further concluded that the children were in need of permanency and that termination of parental rights was not clearly contrary to the their best interests.

## II. STANDARDS OF REVIEW

We review a family court's decision to terminate parental rights for clear error. MCR 3.977(J); *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999). This standard controls our review of "both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A decision is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). We review de novo questions of constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

### III. TERMINATION OF PARENTAL RIGHTS

There is a strong public policy favoring the preservation of the family because the family unit is deeply rooted in our nation's history and tradition. *Moore v East Cleveland*, 431 US 494, 503; 97 S Ct 1932; 52 L Ed 2d 531 (1977). Natural parents have a fundamental liberty interest in the care, custody, and management of their children, and the state must therefore meet a high burden before terminating an individual's parental rights. See *Santosky v Kramer*, 455 US 745, 753-754; 102 S Ct 1388; 71 L Ed 2d 599 (1982). To terminate parental rights, the family court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Fried*, 266 Mich App 535, 540-541; 702 NW2d 192 (2005). The petitioner has the burden of proving the statutory ground. *In re Trejo, supra* at 350. "Once a ground for termination is established, the court must issue an order terminating parental rights unless there exists clear evidence, on the whole record, that termination is not in the child's best interests." *Id.* at 354; see also MCL 712A.19b(5).

### A. STATUTORY GROUNDS FOR TERMINATION

The family court found that petitioner had failed to establish the statutory grounds for termination contained in §§ 19b(3)(a)(*ii*)[3] and (j) by clear and convinc-

---

[3] We agree with the family court that respondents' involuntary deportation to Guatemala did not constitute desertion of the children for

ing evidence. Nonetheless, the court found that petitioner had proven the grounds for termination under § 19b(3)(g) by clear and convincing evidence. MCL 712A.19b(3)(g) provides that the family court may terminate a respondent's parental rights if it finds by clear and convincing evidence that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." The court concluded that because all three respondents had been deported to Guatemala, they were necessarily unable to provide proper care and custody for the children, and would not be able to do so within a reasonable time.

Petitioner was not entitled to seek termination of respondents' parental rights under § 19b(3)(g) in this case because petitioner, itself, intentionally set out to create that very ground for termination. Relying on *Logan v Zimmerman Brush Co*, 455 US 422, 424; 102 S Ct 1148; 71 L Ed 2d 265 (1982), the Connecticut Supreme Court has held that "a state may not, consistent with due process of law, create the conditions that will strip an individual of an interest protected under the due process clause." *In re Valerie D*, 223 Conn 492, 534; 613 A2d 748 (1992). Said another way, the state may not set out with the overt purpose of "virtually assur[ing] the creation of a ground for termination of parental rights." See *In re Shane P*, 58 Conn App 234, 241; 753 A2d 409 (2000). We conclude that when the

---

purposes of MCL 712A.19b(3)(a)(*ii*). The dictionary definitions of the words "desert" and "desertion" indicate that desertion is an intentional or willful act. See *Moore v Prestige Painting*, 277 Mich App 437, 448-449; 745 NW2d 816 (2007). Because respondents were involuntarily deported, the family court properly concluded that they had not "deserted" their children within the meaning of § 19b(3)(a)(*ii*).

state deliberately takes action with the purpose of "virtually assur[ing] the creation of a ground for termination of parental rights," and then proceeds to seek termination on that very ground, the state violates the due process rights of the parent.[4]

### B. BEST INTERESTS OF THE CHILDREN

Even assuming arguendo that the family court properly relied on § 19b(3)(g) to terminate respondents' parental rights, we conclude that the family court erred by holding that termination was not clearly contrary to the children's best interests. The record establishes that respondents were bonded with their children and that they did not want to leave the children behind in the United States at the time of their deportation. Nonetheless, because the family court continued to exercise jurisdiction over the children, respondents were apparently never given the opportunity to take the children with them to Guatemala.[5]

---

[4] We do not in any way diminish the seriousness of respondents' illegal presence in this country or question petitioner's right—and possibly even obligation—to report respondents' illegal status to ICE. Regardless of petitioner's right or obligation to report illegal aliens, however, petitioner still must act fairly. We note for future cases that, even assuming petitioner has the right and power to report illegal aliens to ICE, it must not do so arbitrarily and capriciously. " '[T]he touchstone of due process is protection of the individual against arbitrary action of government,' " *Sacramento Co v Lewis*, 523 US 833, 845; 118 S Ct 1708; 140 L Ed 2d 1043 (1998), quoting *Wolff v McDonnell*, 418 US 539, 558; 94 S Ct 2963; 41 L Ed 2d 935 (1974), and the substantive due-process guarantee protects individuals against government power that is arbitrarily and oppressively exercised, *Daniels v Williams*, 474 US 327, 331-332; 106 S Ct 662; 88 L Ed 2d 662 (1986).

[5] When an alien-parent's child is a United States citizen and the child is below the age of discretion, and if the alien-parent is deported, it is the parent's decision whether to take the minor child along or to leave the child in this country. *Liu v United States Dep't of Justice*, 13 F3d 1175, 1177 (CA 8, 1994); see also *Newton v Immigration & Naturalization*

In support of its contention that termination was not contrary to the children's best interests, petitioner relies on the fact that respondents did not contact it following entry of the family court's order terminating parental rights. We find petitioner's reliance on this specific fact to be disingenuous and without merit. As confirmed at oral argument before this Court, respondents did contact their own counsel, and it is clear that respondents had an ongoing interest in the lives of their children. It is also perfectly understandable that respondents did not contact petitioner under the unique circumstances of this case. As noted above, petitioner was either unwilling or unable to communicate with respondents in Spanish, and petitioner on at least two occasions had failed to produce the children for visitation with respondents. In light of the particular facts of this case, respondents' reluctance to communicate with petitioner did not constitute evidence that termination was not contrary to the best interests of the children.

Also in support of the contention that termination was not contrary to the children's best interests, petitioner relies on the allegations of abuse against Hugo. However, as the family court found, petitioner failed to prove by clear and convincing evidence that any abuse had occurred or that the children would be harmed if returned to their parents' custody. It is true that the family court continued to exercise jurisdiction over the children. But as counsel indicated at oral argument before this Court, this continued exercise of jurisdiction was based on a finding of "environmental neglect," consisting of inadequate sleeping accommodations for the children in respondents' home.

---

*Service,* 736 F2d 336, 343 (CA 6, 1984); and see *Ayala-Flores v Immigration & Naturalization Service,* 662 F2d 444, 446 (CA 6, 1981).

Finally, petitioner suggests that termination was not contrary to the children's best interests because the children will have a better and more prosperous life in the United States than in Guatemala. Although petitioner may truly believe that the children would be better served by remaining in the United States, petitioner's subjective belief in this regard is certainly not evidence that termination was not contrary to the children's best interests. J, E, and A were born in the United States, are United States citizens, and may well decide to return to this country upon reaching the age of discretion. *Newton, supra* at 343; *Ayala-Flores, supra* at 446. However, such future decisions are for J, E, and A to make—not for petitioner or the courts.

The evidence in this case showed that termination of respondents' parental rights would harm the children and that the children would thereby lose all ties to their native language and culture. The family court erred by finding that termination of respondents' parental rights was not clearly contrary to the children's best interests. *In re Trejo, supra* at 354; see also MCL 712A.19b(5).

### IV. JURISDICTION OVER THE CHILDREN

Lastly, we conclude that the family court erred by continuing to exercise jurisdiction over the children because doing so constituted an improper, de facto termination of respondents' parental rights. The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v Glucksberg*, 521 US 702, 720; 117 S Ct 2258; 138 L Ed 2d 772 (1997). The government may not infringe a fundamental liberty interest unless the infringement is narrowly tailored to serve a compelling state interest. *Id.* at

721; *Reno v Flores*, 507 US 292, 302; 113 S Ct 1439; 123 L Ed 2d 1 (1993). It is undisputed that parents have a fundamental liberty interest in the companionship, care, custody, and management of their children. *Santosky*, *supra* at 753-754; *In re JK*, *supra* at 210. This fundamental liberty interest pertains to citizens and aliens alike because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v Davis*, 533 US 678, 693; 121 S Ct 2491; 150 L Ed 2d 653 (2001).

In order to comply with the guarantees of substantive due process, the state must prove parental unfitness by "at least clear and convincing evidence" before terminating a respondent's parental rights. *Santosky*, *supra* at 748. Michigan law fully comports with this requirement, requiring proof of at least one statutory ground "by clear and convincing evidence" before the family court may terminate a respondent's parental rights. MCL 712A.19b(3). In contrast, for the family court to exercise jurisdiction over a child, "the factfinder must determine *by a preponderance of the evidence* that the child comes within the statutory requirements of MCL 712A.2 . . . ." *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998) (emphasis added); see also MCR 3.972(C)(1). Therefore, a lower standard applies to the acquisition and exercise of jurisdiction than to the termination of parental rights.

If the family court had not continued to exercise jurisdiction over the children in this case, respondents would have been able to take the children with them to Guatemala, *Liu*, *supra* at 1177, and there would have arisen no cause for termination of parental rights. However, the court's continued exercise of jurisdiction made it all but certain that respondents would be

permanently separated from their children and that respondents would become unable to provide proper care and custody. In other words, the family court's continued exercise of jurisdiction—based only on a preponderance of the evidence—constituted a de facto termination of respondents' parental rights. This de facto termination of parental rights, which was based on less than clear and convincing evidence of parental unfitness, violated respondents' substantive due process rights. *Santosky, supra* at 748. Under the unique and particular facts of this case, we conclude that the family court's continued exercise of jurisdiction over the children was unconstitutional. *Id.* The family court's order assuming jurisdiction over the minor children is therefore reversed.

## V. CONCLUSION

The termination of respondents' parental rights is reversed, and the family court's order assuming jurisdiction over the minor children is also reversed. Petitioner shall take immediate steps to reunite the minor children with respondents in Guatemala. MCR 7.216(A)(7); MCR 7.216(A)(9). Petitioner shall fully cooperate with the family court and with respondents' counsel to achieve this objective. MCR 7.216(A)(9). This opinion shall take immediate effect. MCR 7.215(F)(2).

Reversed. We do not retain jurisdiction.