# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. S. SANCHEZ, Minor.

UNPUBLISHED
April 6, 2017

No. 333993
Oakland Circuit Court
Family Division
LC No. 2014-825548-NA

Before: M. J. KELLY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent father appeals as of right an order terminating his parental rights to his minor child pursuant to MCL 712A.19b(3)(j) and (n). We affirm.

Respondent father first argues that the trial court clearly erred because petitioner did not make reasonable efforts for reunification, which resulted in the termination of his parental rights. We disagree.

This Court will "review for clear error a trial court's factual findings as well as its ultimate determination that a statutory ground for termination of parental rights has been proved by clear and convincing evidence." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), citing MCR 3.977(K). The trial court's finding is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). The trial court "must find that at least one of the statutory grounds set forth in MCL 712A.19b has been met by clear and convincing evidence." *In re Fried*, 266 Mich App 535, 540-541; 702 NW2d 192 (2005), citing *In re Terry*, 240 Mich App 14, 21-22; 610 NW2d 563 (2000). Questions of law, such as the interpretation and application of statutes and court rules, are reviewed de novo. *In re Mason*, 486 Mich at 152.

"In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App at 542, citing MCL 712A.18f(1), (2), and (4). A failure by petitioner to offer a respondent a reasonable opportunity to participate in services creates a gap in the record that requires reversal of an order terminating parental rights. *In re Mason*, 486 Mich at 158-160.

Respondent father argues that he was offered services that were unattainable because he was incarcerated throughout the pendency of the proceedings. He argues that his situation is

-1-

analogous to *In re B and J*, 279 Mich App 12, 19-20; 756 NW2d 234 (2008), where this Court held "that when the state deliberately takes action with the purpose of virtually assur[ing] the creation of a ground for termination of parental rights, and then proceeds to seek termination on that very ground, the state violates the due process rights of the parent. (Quotation marks and citations omitted.) Respondent father's argument is without merit.

In *In re B and J*, 279 Mich App at 19, the petitioner sought termination under MCL 712A.19b(3)(g), claiming that the parents failed to provide proper care and custody for the child, and there was no reasonable expectation that they would be providing care and custody in the future. However, the trial court refused to terminate the parents' rights because the petitioner had reported the parents, who were in the country illegally, to the immigration authorities. *Id*. Due to the petitioner's actions, the parents were deported, leaving their children without proper care and custody. *Id*. For that reason, the trial court concluded that the state had deliberately taken actions that caused the ground for termination. *Id*. at 19-20. No such circumstance exists in this case. Instead, respondent father was incarcerated first in the Oakland County Jail on a domestic violence conviction, then in the Macomb County Jail on a CSC conviction, and then in the Cuyahoga County Jail in Ohio on a sexual battery conviction. The service worker was unable to provide services because those jails did not offer either parenting or domestic violence classes. The state did not "set up" respondent father by providing unattainable services, but instead, respondent father's own voluntary criminal actions resulted in his incarceration and inability to complete the services required for reunification. The state did not put respondent father in a position where services could not be completed so that he would be unable to fulfill his parent/agency agreement (PAA), which was the situation in *In re B and J*. Therefore, respondent father's argument is unavailing.

Furthermore, the record indicates that petitioner did everything it could to provide services for respondent father. Every time respondent father was transferred to another jail for a different crime, the service worker contacted the head of services at the jail to determine whether it offered the services required under the PAA. The service worker testified that every jail informed him that the services needed were not offered at that jail. Respondent father argues that the service worker did not make reasonable efforts because the jail in Ohio did, in fact, offer parenting classes and possibly domestic violence classes. However, the service worker testified under oath that the director of services at the Cuyahoga County Jail in Ohio said no such services were available. Any miscommunication between the Michigan Department of Health and Human Services (DHHS) and the jail should not be attributable to a lack of effort on the part of DHHS.

Finally, *In re B and J* does not apply to the situation in this case because even if DHHS was responsible for providing respondent father with unattainable services, the grounds for respondent father's termination were not based on a failure to complete services. The petition claimed that termination was proper under MCL 712A.19b(3)(j) and (n)(*i*), which involve possible harm to the child. Respondent father's termination was based predominantly on the fact that he has an extensive criminal history involving coercive and violent crimes towards women and children. In fact, respondent father admits on appeal that the statutory grounds exist under both subsections (3)(j) and (3)(n)(*i*), and therefore, he cannot now claim that his inability to obtain services resulted in the termination of his parental rights. The trial court did not clearly err when it determined that DHHS made reasonable efforts towards reunification.

Respondent father also argues that termination of his parental rights was not in the best interests of the child. We disagree.

This Court reviews for clear error a trial court's findings of fact regarding whether termination is in the child's best interests. *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003), citing *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). Whether termination of parental rights is in the child's best interest must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

Once a statutory ground has been proven, the trial court must find that termination is in the child's best interest before it can terminate respondent father's parental rights. MCL 712A.19b(5); MCR 3.977. In considering whether termination of parental rights is in the best interests of the child, "the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Additionally, the trial court may consider "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. This Court should also consider the "length of time the child was in care" and "the likelihood that 'the child could be returned to her parents' home within the foreseeable future." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015), quoting *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

"Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an 'explicit factor to consider in determining whether termination was in the children's best interest.' " *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012), quoting *In re Mason*, 486 Mich at 164 (citations omitted). "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

The trial court found by a preponderance of the evidence that termination of respondent father's parental rights was in the best interest of the child. On appeal, respondent father's argument focuses predominantly on the fact that the child is placed with a relative, which is a best interest factor that weighs against termination. While we agree, as does petitioner and the lawyer-guardian ad litem, that this factor weighs against termination, the overwhelming majority of the best interest factors support termination.

The trial court expressly noted that, under *In re Mason*, courts must consider that a child is in relative placement. The trial court explained, "[W]hile placement with a relative weighs against termination in some cases, this factor in this case is far outweighed by the parent's failure to be able to offer this child any permanency, stability or finality. In fact, we don't even know where [respondent father] will be after July 14th, 2016 [sic]. He may be on probation, he may not be able to leave the state of Ohio. He may be incarcerated for--of--for up to five additional years." The factual record is adequate under *In re Olive/Metts Minors* because the trial court expressly addressed this factor, and therefore, the issue turns only whether the trial court clearly

erred when, despite the child being in relative placement, it determined that the best interest factors weighed in favor of termination.

After reviewing the record, the trial court did not err because the other best interest factors supported termination. We turn first to the bond between the child and her father. The child was just over a year old when respondent father was incarcerated. While respondent father may have had a bond with his child at that time, he was unable to have any contact, apart from writing letters, with his daughter while he was in jail. By the time the child was three years old, respondent father was still unable to see his daughter, and he had just pleaded guilty to sexual battery and was facing up to five more years of incarceration. At the time of the best interest hearing, any kind of bond had diminished, as the service worker testified on numerous occasions that the child was developing a strong bond with her maternal relatives. In fact, the child had begun to call her great-aunt and great-uncle, "Mama and Papa." Even respondent father's psychological evaluation, conducted on May 6, 2015, explained that "there are significant concerns about the detrimental effect [respondent father's] incarceration could have in terms of his bond with [the child], who is not even two years of age." Given respondent father's persistent incarceration and uncertain future, the child's bond with her maternal relatives will grow stronger, and her bond with her father will only become weaker, and therefore, the first best interest factor weighs in favor of termination.

The next factor involves a parent's parenting ability, and the trial court determined that, despite respondent father having taken a parenting course, respondent father had demonstrated that he was not ready to parent his child. When asked what specific parenting skills respondent father had learned, he could not provide more than generalized statements and a declaration that he needs to stay out of trouble. The trial court also noted at the termination hearing respondent father's psychological report, which indicated that his "operational judgment appear[ed] to be impaired based upon his history of domestic violence." Even if respondent father had begun to take positive steps towards parenting his child, the psychological evaluation revealed that many of respondent father's issues were unresolved, and there was a high likelihood that he would continue his criminal ways. See *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009) (holding that termination was in the child's best interest even though the parent "took positive steps to address issues concerning anger" by attending classes because a psychological evaluation concluded that parent's issue was unresolved).

Moreover, a parent's history as a perpetrator of domestic violence is an important consideration when determining a child's best interests. *In re White*, 303 Mich App at 714. Respondent father has an extensive history of domestic violence beginning in 2007, and his third occurrence of domestic violence happened after the child was born, further reflecting on his parenting ability. Therefore, these factors weigh in favor of termination.

The trial court concluded that even though the child is in relative placement, her need for permanency, stability, and finality "far outweighed" the fact that the child was placed with a maternal relative. In *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011), this Court concluded that the children at 3½ years old and 10 months old, who "were thriving and progressing," required a home where they could continue to receive stability and permanency with foster parents willing to adopt them. Here, as in *In re VanDalen*, the child is also

-4-

approximately 3½ years old, and her need for stability, permanency, and finality far outweighs the fact that she is currently with a relative.

Numerous other factors also weigh in favor of termination. At the best interest hearing, it was unknown when respondent father would be released from jail. More importantly, respondent father's criminal history against women and children, including a CSC charge against a minor child, shows respondent father would be unlikely to provide the child the kind of safe environment that she has with her maternal relatives. As it stands, the child is thriving in her current placement and is developing normally. She has a significant bond with her maternal relatives, and they wish to adopt the child. Therefore, these factors weigh in favor termination.

The final factors to consider are the length of time the child has been in care and whether she could be returned in the foreseeable future. Both factors favor termination. First, the child has been with her maternal relatives for more than half her life. The record indicates that, at the time of the best interest hearing, respondent father was unsure when he would be released from jail or if he would even be allowed to leave the state of Ohio. Even if he was released, his psychological evaluation and inability to complete services while incarcerated proved that a substantial amount of time would be needed before the child could be returned to respondent father. Therefore, it is highly unlikely that the child would be able to be returned to her father in the foreseeable future, and this factor further weighs in favor of termination.

While the child may be in relative placement, this factor is not dispositive. *In re Olive/Metts Minors*, 297 Mich App at 43. Given the majority of best interest factors support termination, the trial court did not clearly err when it concluded that termination was in the best interest of the child.

Affirmed.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Amy Ronayne Krause

-5-