*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re QUINTANILLA/BECERRA/
HICKS, Minors.

UNPUBLISHED
March 12, 2019

No. 345545
Lenawee Circuit Court
Family Division
LC No. 15-000498-NA

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Respondent appeals the trial court order terminating his parental rights to his two minor children under MCL 712A.19b(3)(a)(*ii*), (g), and (j). We affirm the trial court's termination of respondent's parental rights under MCL 712A.19b(3)(a)(*ii*) and (j), and we conclude that respondent was not deprived of his right to due process.

Respondent has a long criminal history. In 2003, he was incarcerated for possession of marijuana. He moved to Texas in 2008, and by 2009, he was incarcerated there for domestic violence against the mother of his children. After 2011, respondent went to work and paid child support. However, at the commencement of the termination proceedings, respondent was again incarcerated, this time in Colorado. Since 2008, respondent had minimal contact with his children, and at the time of the termination proceedings, he owed more than $12,000 in child support arrearages to the mother and grandmother of his children.

On February 22, 2018, a petition for termination of respondent's parental rights to his two children was filed, seeking termination in the initial petition. On August 14, 2018, respondent's parental rights were terminated under MCL 712A.19b(3)(a)(*ii*), (g), and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> (a) The child has been deserted under either of the following circumstances:

\* \* \*

(*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

On appeal from termination of parental rights proceedings, this Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K); *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999). To terminate parental rights, the Department of Health and Human Services (DHHS) must establish by clear and convincing evidence the existence of at least one statutory ground for termination found in MCL 712A.19b(3). *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003); *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013).

Respondent challenges only the trial court's holding that there was clear and convincing evidence to support termination of his parental rights under MCL 712A.19b(3)(j). However, only one ground for termination needs to be established to terminate parental rights. *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). Because respondent does not challenge the trial court's findings as to subsections (a)(*ii*) and (g), any error with regard to subsection (j) is immaterial. Nonetheless, we address respondent's argument.

Respondent contends that there was no evidence that the children would be at risk of harm if placed in his care and custody. We disagree.

There was documented evidence of domestic violence between respondent and the children's mother on April 15, 2015. During his testimony, respondent agreed that he had been incarcerated for domestic violence against the children's mother, but he argued that he never laid a hand on her and was convicted on the basis of lies. However, respondent's 14-year-old son testified that he witnessed respondent abuse his mother and be arrested for domestic violence. Respondent's son testified that his mother was thrown into a wall by respondent, which created "a big hole in the wall." He further testified that respondent chased her and would "go after her" when he got mad at her. Respondent's son was present when respondent picked up a pick ax and charged toward his mother. He was pulling on respondent's shirt to stop him as the police pulled up. We find that the domestic violence perpetrated by respondent in the home with his children

---

[1] MCL 712A.19b(3)(g) was amended effective June 12, 2018. See 2018 PA 58.

showed that he was a danger to the people around him, including his children and their siblings. Domestic violence certainly affected the mental state of all the children who witnessed it. Respondent had not addressed any of his anger issues.

In 2012, respondent had a face-to-face meeting with a CPS worker who informed him that CPS had an open case concerning the children and that their mother was abusing them. Instead of assuming responsibility for the care of his children, respondent left that very day for Texas. During his time in Texas, respondent spent additional time incarcerated for failure to pay child support and unlawful possession of a firearm. The Social Work Contact Log admitted at the termination hearing showed that attempts were made to contact respondent concerning CPS investigations and to notify him when the children were taken from the mother and placed in foster care. When asked about the contact he had with his children in the past ten years, respondent blamed everyone else for his lack of contact; accused others of lying; and claimed that the court had taken away all of his rights. Once the termination petition was filed in this case, respondent was permitted to make phone calls to his children. However, because he let a fellow inmate use his phone, he lost six months' of phone privileges, depriving him of the opportunity to build a relationship with his children. His actions over the years showed no acceptance of his responsibilities as a parent, a lack of caring for his children, and serious anger issues. We conclude the trial court did not clearly err in finding that the children would be at risk of harm if returned to respondent. MCL 712A.19b(3)(j).

Although respondent did not raise the issue, we conclude that there was also clear and convincing evidence to support termination under MCL 712A.19b(3)(a)(*ii*). Respondent had been incarcerated in other states and out of contact with his children for a period of time significantly longer than 91 days. He made no effort to plan for or financially support his children. When this case started against the mother in October 2015, and respondent's children were placed in foster care, no one knew where respondent was and it was alleged that he had no contact with the children. More than two years later, on February 22, 2018, the petition for termination of respondent's parental rights alleged that he had very little contact with his children, had provided no financial support to them, had engaged in domestic violence against their mother in April 2015, and was currently incarcerated in Colorado. During this case, the worker facilitated and encouraged respondent to telephone and write letters to his children. However, he was unable to have any phone contact with them because, through his own actions, he lost the privilege to make any calls for six months. He did not seek custody of the children during this time. As the trial court found, respondent had lived in several different states for most of their lives, was in arrears for thousands of dollars in child support; and was incarcerated for a large portion of his children's lives. There was clear and convincing evidence that respondent had deserted and abandoned his children. The trial court did not clearly err in finding that respondent had abandoned the children for more than 91 days under MCL 712A.19b(3)(a)(*ii*).

When the trial court found clear and convincing evidence to support termination under MCL 712A.19b(3)(g), it stated that there was clear and convincing evidence that "without regard to intent" respondent had "failed to provide proper care or custody for [his] children and there is no reasonable expectation that [he] will be able to provide proper care and custody within a reasonable time considering the age[s] of [his] children." The court made this holding on August 14, 2018. On that date, the amended provisions of § (3)(g) were in effect, as presented above.

Therefore, the court erred when it did not make findings consistent with the amended statute. However, as stated previously, only one statutory ground was required to terminate parental rights. *In re Gonzales/Martinez*, 310 Mich App at 431.

Respondent next contends that his substantive due process rights were violated because the trial court and the DHHS failed to comply with several statutory and court rule provisions. We disagree.

Respondent's claimed violations of statutory provisions and court rules stem primarily from the court's alleged failures to provide notice to him of the original petition or preliminary hearing, in which the court found it had jurisdiction of the children as to the mother (this allegation of lack of notice was refuted by the trial court and exhibits), and failure to allow him to participate in proceedings from October 2015 through March 2018; failure to require the DHHS to provide him with a case service plan and to facilitate his access to services and work toward reunification; and failure to evaluate his current wife and their home for placement. He also relies on the holding in *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010), which provides that an incarcerated respondent is entitled to all the notice, procedures, hearings, findings, services, and participation as any other respondent. We find this claim lacks merit.

First, respondent claims a violation of his *substantive* due process rights. The heart of a substantive due process claim is that the government exercised its power arbitrarily and oppressively. *In re B & J*, 279 Mich App 12, 20 n 4; 756 NW2d 234 (2008). The essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests. To sustain a substantive due process claim, the person claiming a deprivation of substantive due process must show that the action was so arbitrary (in a constitutional sense) as to shock the conscience. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 200-201; 761 NW2d 293 (2008); see also *In re TK*, 306 Mich App 698, 706; 859 NW2d 208 (2014) ("[T]he essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests."). Whether governmental conduct shocks the conscience depends on the factual circumstances of the case. *County of Sacramento v Lewis*, 523 US 833, 851-853; 118 S Ct 1708; 140 L Ed 2d 1043 (1998). Upon review of the record, we find that respondent has failed to demonstrate any action or omission by the trial court or the DHHS that would shock the conscience of this Court.

The initial petition for termination of respondent's parental rights was filed on February 22, 2018. As authorized by MCL 712A.19b(4), petitioner sought termination of respondent's parental rights in the initial petition. Generally, the petitioner is required to make reasonable efforts to rectify the conditions that cause a child's removal by adopting a service plan, except when termination of parental rights is the agency's goal. The DHHS is not required to provide reunification services when termination of parental rights is sought in the initial petition. *In re Moss*, 301 Mich App at 91; *In re HRC*, 286 Mich App 444, 462-464; 781 NW2d 105 (2009); MCR 3.977(E). Services need not be provided where reunification is not intended. *In re LE*, 278 Mich App 1, 21; 747 NW2d 883 (2008).

Further, respondent's *procedural* due process rights were also not violated. Procedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker. *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009). Ultimately, due process requires fundamental fairness. *Id.* Respondent had notice that the petition was going to be filed,

he was represented by an attorney, and he had an opportunity to be present at the hearing telephonically to make his case.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron