*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. M. MULLINS, Minor.

UNPUBLISHED
October 15, 2024
1:38 PM

No. 368998
Wayne Circuit Court
Family Division
LC No. 2022-000443-NA

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child, PMM, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist) and (j) (reasonable likelihood that child will be harmed if returned to parent). We affirm.

Respondent is the mother of PMM. PMM's biological father is unknown.[1] The trial court first acquired jurisdiction over PMM in March 2022, after the Department of Health and Human Services (DHHS) filed a petition for child protective proceedings alleging that PMM was born prematurely and thereafter treated for drug withdrawal symptoms. Respondent admitted that she was addicted to heroin, and used cocaine and heroin throughout her pregnancy. Following a preliminary hearing, the referee authorized the petition and placed PMM with respondent's brother, Jake Archer, and his wife, Kassandra Archer. Respondent thereafter entered a plea of admission to the allegations in the petition and the trial court found statutory grounds to exercise jurisdiction over PMM under MCL 712A.2(b)(1) and (2). The trial court ordered respondent to, among other things, obtain a psychological evaluation and follow all recommendations, participate in individual therapy with a substance abuse component, complete weekly random drug screens, complete parenting classes, and obtain employment and safe and suitable housing.

---

[1] The order terminating respondent's parental rights also terminated the unknown biological father's parental rights.

Numerous dispositional hearings were held, at which evidence was admitted demonstrating that respondent was not complying with her case service plan. Respondent completed a psychological evaluation, but did not follow its recommendations, and failed to participate in individual counseling. Respondent reported on numerous occasions that she would be attending substance abuse treatment, but would fail to follow through or would leave treatment after several days without completing the program. Respondent failed to participate in weekly drug screens. Respondent failed to consistently visit PMM, and did not visit PMM at all between October 2022 and July 2023. Respondent's whereabouts during that time were unknown because respondent failed to maintain contact with her caseworker. The evidence also demonstrated that PMM was growing and thriving in her placement with Jake and Kassandra.

In August 2023, petitioner filed a supplemental petition to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*) (other conditions exist causing child to enter court's jurisdiction), (g) (no reasonable expectation that parent will be able to provide proper care or custody within a reasonable time), and (j). The supplemental petition alleged that respondent failed to complete or benefit from her court-ordered services, was terminated from parenting classes for lack of attendance, missed 60 out of 62 drug screens, failed to obtain suitable housing, failed to maintain contact with her caseworker, and failed to consistently visit PMM. Following a termination hearing, the trial court found that petitioner presented clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j). The trial court also found by a preponderance of the evidence that termination of respondent's parental rights was in PMM's best interests. Respondent now appeals.

Respondent argues that the trial court erred by terminating her parental rights because due process required the trial court to fully consider and rule out a guardianship as a less restrictive alternative to termination before terminating respondent's parental rights, and the trial court failed to do so. We disagree.

Generally, an issue is preserved for appeal if the issue was raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Respondent did not argue in the trial court that due process required the trial court to consider and rule out less restrictive means, such as a guardianship, before terminating respondent's parental rights; nor did the trial court decide whether due process required such a consideration. As such, this issue is unpreserved. This Court reviews unpreserved claims of error in termination proceedings for plain error affecting substantial rights. *In re Baham*, 331 Mich App 737, 744-745; 954 NW2d 529 (2020). "In order to prevail, respondent must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [her] substantial rights." *Id*. at 745 (quotation marks and citation omitted; alteration in original). An error is clear or obvious when it is not subject to reasonable dispute. *Id*. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted). Under the plain-error rule, reversal is only warranted if the error "seriously affected the fairness, integrity or public reputation of [the] judicial proceedings." *Id*. (quotation marks and citation omitted).

"The Fourteenth Amendment of the United States Constitution provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . .' " *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014), quoting US Const, Am XIV, § 1. The

-2-

Fourteenth Amendment's guarantee of due process includes "a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id*. (quotation marks and citation omitted). Among the fundamental rights protected by due process is the right of parents to make decisions regarding the custody, care, and control of their children. *Id*. But this right is not absolute: the state has a "legitimate interest in protecting the moral, emotional, mental, and physical welfare" of children. *Id*. at 409-410 (quotation marks and citation omitted). To protect against the erroneous deprivation of a parent's fundamental right to make decisions concerning his or her child, the state must "meet a high burden before terminating an individual's parental rights." *In re B & J*, 279 Mich App 12, 18; 756 NW2d 234 (2008).

Due process requires that the state prove a parent's lack of fitness by clear and convincing evidence before terminating parental rights. *Id*. at 23. "Michigan law fully comports with this requirement, requiring proof of at least one statutory ground [for termination] by clear and convincing evidence before the family court may terminate a respondent's parental rights." *Id*. (quotation marks and citation omitted). Once the petitioner establishes by clear and convincing evidence the existence of a statutory ground for termination under MCL 712A.19b(3), "the liberty interest of the parent no longer includes the right to custody and control of the children." *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). Even if a trial court finds that statutory grounds for termination are established by clear and convincing evidence, "it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

In the instant case, the trial court found that petitioner established by clear and convincing evidence the existence of statutory grounds for termination under MCL 712A.19b(3)(c)(*i*) and (j), and that termination of respondent's parental rights was in PMM's best interests. On appeal, respondent does not challenge either of these findings by the trial court; rather, respondent argues that due process requires the trial court to consider and rule out a guardianship as a less restrictive alternative before terminating respondent's parental rights, and the trial court failed to legitimately consider and rule out a guardianship.

"Under appropriate conditions, a trial court may forego termination and instead place a child in a guardianship." *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 6. A guardianship enables the parent and the child to maintain a relationship while placement with the parent is not possible. *Id*. Typically, a trial court appoints a guardian in an effort to avoid terminating a respondent's parental rights. *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019). Further,

> for a court to consider a guardianship before termination, one of two conditions must be met: either the DHHS must demonstrate "under [MCL 712A.19a(8)] that initiating the termination of parental rights to the child is clearly not in the child's best interests" or the court must "not order the agency to initiate termination" proceedings under MCL 712A.19a(8). [*Id*., quoting MCL 712A.19a(9) (alteration in original).]

Even when one of these conditions is met, however, a trial court can only order a guardianship if it determines that doing so is in the child's best interests. *Id.* at 360.

Respondent has not established plain error affecting her substantial rights. Respondent cites no authority holding that due process requires the trial court to consider and rule out a guardianship before terminating a respondent's parental rights, nor have we located any authority requiring a trial court to consider and rule out less restrictive means before termination. Even if there was authority supporting respondent's argument, however, respondent has not established plain error. As respondent acknowledges on appeal, the trial court did, in fact, consider and rule out a guardianship before terminating respondent's parental rights. At the conclusion of the termination hearing, the referee found that a guardianship was not a realistic option for PMM because, given respondent's history, it was unlikely that respondent would be able to provide PMM with stability, permanency, and finality in the future. The referee also noted PMM's young age and need for permanency in finding that guardianship was not a realistic option. In the subsequent order terminating parental rights, the trial court also found that "no other [less] restrictive outcome[,] such as guardianship[,] could be in the child's best interest." Accordingly, even if respondent had established that the trial court was required to consider and rule out a guardianship before terminating her parental rights, respondent cannot establish that the trial court plainly erred by failing to do so because the record demonstrates that the trial court did consider and rule out a guardianship before termination.

Respondent argues that the trial court did not legitimately consider a guardianship as an alternative to termination because the trial court did not receive any evidence to justify its finding that a guardianship was not in PMM's best interests. This argument is unpersuasive. Lauren Haas-Lewis, the DHHS caseworker assigned to the family, opined that guardianship was not an appropriate permanency plan for PMM because of her young age and need for permanency. Jake also opined that guardianship would not be appropriate because respondent had been abusing drugs for the preceding 15 years and was in and out of Jake's life during that time; thus, Jake expressed concern that a guardianship would leave the door open for respondent to come in and out of PMM's life.

Though respondent argues that Haas-Lewis's and Jake's testimonies were insufficient to justify the trial court's finding that a guardianship was not in PMM's best interests, because their testimony was "infected with a fundamental misunderstanding about the nature of juvenile guardianship," their testimonies regarding their opinions on the propriety of a guardianship were not the only evidence supporting the trial court's finding. Haas-Lewis testified that PMM did not have a bond with respondent, and PMM had been placed with Jake and Kassandra since she was three days old and looked to Jake and Kassandra for comfort and security. Haas-Lewis opined that there were no additional services that DHHS could offer respondent that would enable her to appropriately care for PMM at the time of the termination hearing, and providing respondent additional time to work services would not result in meaningful change. Indeed, the record demonstrates that respondent failed to comply with the services offered during the pendency of the instant proceedings, and demonstrated a pattern of reporting that she would be attending substance abuse treatment, failing to complete that treatment, and then disappearing from PMM's life for extended periods of time. Evidence was also presented demonstrating that respondent missed over 100 scheduled visits with PMM during the pendency of the proceedings, and PMM did not recognize respondent because of respondent's prolonged absence from PMM's life. From

this evidence, the trial court could conclude that maintaining an ongoing relationship with respondent was not in PMM's best interests; thus, the trial court could conclude that a guardianship was not in PMM's best interests. See *In re Mason*, 486 Mich 142, 168-169; 782 NW2d 747 (2010) (holding that a guardianship is an appropriate alternative to termination "if the court concludes that the child[] should not be returned to respondent but an ongoing relationship with [respondent]—rather than termination—is in the child['s] best interests.")

Moreover, "the appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned home, yet initiating termination of parental rights is clearly not in the child's best interests." *In re TK*, 306 Mich App 698, 707; 859 NW2d 208 (2014). The trial court found that termination was in PMM's best interests, and respondent does not challenge this finding on appeal. Because the trial court found that terminating respondent's parental rights was in PMM's best interests, the trial court could appropriately rule out a guardianship as a permanency option for PMM. Considering that respondent has not demonstrated that the trial court was required to consider and rule out a guardianship before terminating her parental rights, nor has respondent demonstrated that the trial court failed to do so, respondent has not established plain error affecting her substantial rights. Accordingly, respondent has not established entitlement to reversal of the order terminating her parental rights.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen