*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
July 2, 2024

*In re* K. A. P. HARRIS-BUCHANAN, Minor.

No. 368530
Wayne Circuit Court
Family Division
LC No. 2019-001361-NA

Before: MARKEY, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his minor child, KHB, pursuant to MCL 712A.19b(3)(a)(*ii*) (parent has deserted child for 91 or more days and not sought custody during that period), (c)(*i*) (conditions that led to adjudication continue to exist), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

In May 2021, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over KHB and remove her from respondent's care. DHHS alleged that KHB had been born positive for cocaine and marijuana, respondent and KHB's mother engaged in domestic violence in front of KHB and her three maternal half-siblings, KHB's mother severely physically abused KHB's siblings, and respondent failed to protect KHB and her siblings from physical abuse and an unfit home environment.[1] The trial court authorized the

---

[1] KHB's mother, with whom respondent, KHB, and KHB's three siblings lived, was also a respondent throughout this case, and her parental rights to KHB were terminated by the trial court. Additionally, all three of KHB's siblings were subject to the proceedings below, and their father was also a respondent throughout this case. KHB's mother, three siblings, and the father of KHB's siblings are not involved in this appeal.

petition, all of the children were removed from the care of respondent and KHB's mother, KHB was placed with her paternal aunt, and the parents were granted supervised parenting time.

In July 2021, DHHS, at the trial court's direction, filed an amended petition requesting that the trial court take jurisdiction over KHB and terminate respondent's parental rights at initial disposition pursuant to MCL 712A.19(b)(3)(b)(*i*) (parent's act caused physical injury or physical or sexual abuse to child or sibling); (g) (failure to provide proper care and custody); (j) (reasonable likelihood of harm if returned to parent); and (k)(*iii*) (parent's abuse of child or sibling included battering, torture, or other severe physical abuse). DHHS alleged that one of KHB's siblings disclosed to his foster parents that respondent and KHB's mother regularly locked him and KHB's other two siblings in the attic for several days at a time when they lived in their home. DHHS also alleged that KHB's siblings disclosed that respondent had, on more than one occasion, threatened to kill them while he physically abused KHB's mother in front of them.

In October 2021, the trial court conducted a combined adjudication and initial dispositional hearing. Respondent pleaded no contest to several allegations in DHHS's amended petition establishing the statutory grounds for termination pursuant to MCL 712A.19b(3)(j). Respondent also pleaded no contest to the court's exercise of jurisdiction. The parties agreed to the trial court relying on the sworn amended petition as the factual basis for respondent's plea, which detailed the physical abuse by KHB's mother, the domestic violence by respondent, and respondent's threats of death toward KHB's siblings. After reviewing the petition once more and determining that it provided a sufficient factual basis for the plea, the court assumed jurisdiction.

The trial court then proceeded to the initial dispositional hearing, which simultaneously acted as a termination hearing because DHHS had petitioned for termination at initial disposition. After receiving testimony from DHHS employees regarding KHB's best interests and expressly considering KHB's relative placement, the trial court found that termination of respondent's parental rights was not in KHB's best interests and proceeded to disposition. DHHS provided a case service plan, which the trial court adopted. The court ordered respondent to comply with his case service plan and participate in and benefit from individual therapy, domestic violence services, anger management services, and parenting education. The court also ordered respondent to complete a psychological evaluation, obtain and maintain suitable housing and a legal source of income, maintain regular contact with DHHS, and participate in parenting time.

From October 2021 until September 2023, respondent made minimal progress on his case service plan. Respondent was dismissed from anger management services and parenting education multiple times for failing to participate. Respondent inconsistently attended individual counseling and, despite the therapist's focus on domestic violence, respondent repeatedly threatened KHB's relative placement with violence. Respondent struggled to obtain suitable housing and, at one point, reported being homeless. Respondent minimally attended parenting times throughout the case and stopped attending parenting times entirely in November 2022. Respondent inconsistently communicated with DHHS and ceased communication entirely in November 2022. He also missed several court hearings throughout the proceedings.

In September 2023, DHHS filed a supplemental petition to terminate respondent's parental rights pursuant to MCL 712A.19(b)(3)(a)(*ii*), (c)(*i*) and (*ii*), (g), (j), and (k)(*i*) (abandonment of

young child).  At the termination hearing in October 2023,[2] respondent's caseworker testified that DHHS had provided numerous services, but respondent failed to participate in them.  Respondent initially attended parenting education classes, but he was eventually dismissed from the service for failing to attend.  Respondent also never participated in family counseling or domestic violence education services, despite being referred multiple times.  The caseworker provided respondent with a multitude of resources to assist him in obtaining a legal source of income and suitable housing, but respondent did not utilize the services.  Respondent inconsistently communicated with his caseworker via phone or text message and never visited the agency in person, and he ceased all communication in November 2022.  Respondent received supervised parenting time but rarely attended; despite having reliable transportation, respondent attended only 21 of 152 scheduled parenting times and, at the time of the termination hearing, had not attended a parenting time since November 2022.

Respondent's caseworker further testified that termination was in KHB's best interests because respondent had not visited or attempted to visit KHB in nearly a year, had largely failed to participate in or benefit from services, and had not demonstrated that he could provide KHB with adequate care or a stable home environment.  The caseworker testified that there was no bond between respondent and KHB.  KHB had been in her aunt's care since she was only a few months old and was thriving in her home.  All of KHB's needs were met, and she was bonded with her relative placement.  The caseworker testified that guardianship was an inappropriate alternative to adoption because it did not provide the same level of permanency.  The caseworker believed that guardianship would be particularly disruptive to KHB's life because there was significant discord between respondent and KHB's aunt and, given respondent's violent threats throughout the proceedings, KHB's aunt feared for KHB's safety as well as her own.  Additionally, KHB's aunt repeatedly expressed that she preferred to adopt KHB as opposed to any other permanent placement option.  After the close of proofs, the trial court announced its findings on the record, and it terminated respondent's parental rights pursuant to MCL 712A.19b(3)(a)(*ii*), (c)(*i*), and (j) because DHHS had established those statutory grounds by clear and convincing evidence and termination was in KHB's best interests.  This appeal followed.

## II.  BEST INTERESTS

On appeal, respondent does not challenge the trial court's finding that the statutory grounds for termination of his parental rights were established by clear and convincing evidence and, instead, only challenges the trial court's finding that termination was in KHB's best interests.

We review for clear error a lower court's decision that termination is in a child's best interests.  *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012).  A finding is clearly erroneous if the reviewing court is left with the firm and definite conviction that the lower court made a mistake.  *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020).  "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence."  *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).  This Court gives

---

[2] Respondent did not attend the termination hearing, despite receiving proper notice.

deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

When determining whether termination is in the best interests of the child, the court should place its "focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the child[]'s best interests," and it should consider a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *Id*. at 714.

Respondent principally argues that the trial court inadequately considered his bond with KHB, but the trial court found that there was no bond between him and KHB because respondent minimally attended parenting time, did not engage with KHB during parenting time, and had not attended parenting time in nearly a year. Furthermore, the trial court should consider a wide variety of factors and weigh *all* of the available evidence. *Id*. at 713-714. Respondent's caseworker testified that respondent failed to complete parenting education and domestic violence services, despite multiple referrals. Respondent only minimally participated in individual therapy for a brief period of time at the start of the proceedings, and he never participated in family counseling as recommended. Respondent did not obtain or maintain a legal source of income or appropriate housing, and he repeatedly threatened DHHS employees and KHB's relative placement and exhibited violent behavior. Despite having reliable transportation, respondent did not attend an overwhelming majority of his parenting-time sessions and stopped attending parenting time entirely in November 2022. When respondent did attend parenting time, he did not engage with KHB. The caseworker testified that KHB had no bond with respondent but had a strong bond with her aunt, with whom she had lived since she was only a few months old. KHB was thriving in her aunt's home, and her aunt repeatedly expressed interest in adopting KHB to provide her with a permanent and stable home.

Respondent also argues that KHB's relative placement weighed against termination. "[A] child's placement with relatives is a factor that the trial court is required to consider when making its best-interests determination, and a child's placement with relatives weighs against termination." *Mota*, 334 Mich App at 321 (quotation marks and citations omitted). Relative placement, however, is not the only consideration relevant to this determination, and a "trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *Olive/Metts Minors*, 297 Mich App at 43. The trial court in this case explicitly considered relative placement when it made its best-interests findings, and it found that while the relative placement was meeting all of the child's needs at that time, other relevant considerations— namely, respondent's failure to visit KHB for nearly a year, his lack of compliance with and benefit from his case service plan, his antagonistic and violent behavior toward the relative placement, and KHB's young age and need for stability and permanency—vastly outweighed the relative-placement factor and showed that termination would best serve KHB's interests going forward. The record evidence supports this determination, and we see no clear error in it. See *Mota*, 334 Mich App at 40.

-4-

## III. ALTERNATIVES TO TERMINATION

Respondent also argues that the trial court should have considered a guardianship in lieu of termination of his parental rights, that no less restrictive alternative to termination was ever considered, and that the court's failure to consider such alternatives violated his due-process rights. Because respondent did not argue in the trial court that his due-process rights were violated, we review this unpreserved claim of constitutional error for plain error affecting substantial rights. See *In re Pederson*, 331 Mich App 445, 462-463; 951 NW2d 704 (2020); *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). The respondent bears the burden of persuasion and, to obtain appellate relief, must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). To satisfy the third element, the respondent must show that the error "affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Moreover, reversal is not warranted unless the plain error also seriously affected the integrity, fairness, or public reputation of the judicial proceedings. *Mota*, 334 Mich App at 311.

"Under appropriate conditions, a trial court may forego termination and instead place a child in a guardianship." *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 6. "[F]or a court to consider a guardianship before termination, one of two conditions must be met: either the DHHS must demonstrate 'under [MCL 712A.19a(8)] that initiating the termination of parental rights to the child is clearly not in the child's best interests' or the court must 'not order the agency to initiate termination' proceedings under MCL 712A.19a(8)." *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019), quoting MCL 712A.19a(9) (alteration in original). See also *In re COH*, 495 Mich 184, 197; 848 NW2d 107 (2014). Even then, a trial court may order a guardianship only if it "determines that [doing so] is in the child's best interests[.]" MCL 712A.19a(9)(c). In this case, neither of the conditions under MCL 712A.19a(9) was met. DHHS did not demonstrate that termination was clearly not in KHB's best interests—to the contrary, it believed termination *was* in KHB's best interests—and the trial court ordered DHHS to initiate the termination proceedings, ultimately agreeing with DHHS that termination was in KHB's best interests. There is also nothing in the record to indicate that a guardianship was requested or that anyone would have agreed to such an arrangement. See *Rippy*, 330 Mich App at 359.

Additionally, contrary to respondent's claims, alternatives to termination, including guardianship, were considered and eliminated as viable options. The caseworker testified that guardianship was an inappropriate alternative to adoption in this case because it could not provide KHB with the level of permanency and stability that she needed. The caseworker emphasized that a guardianship would be particularly disruptive to KHB given the significant discord between respondent and KHB's aunt. And KHB's aunt repeatedly expressed to DHHS employees that she was interested in adopting KHB as opposed to any other long-term placement option. Defendant has not shown how, under these circumstances, his due-process rights were violated—let alone that any such violation was plain and affected both the outcome and the fairness, integrity, or public reputation of the proceedings. *Mota*, 334 Mich App at 311; *Utrera*, 281 Mich App at 9. Cf. *In re B and J*, 279 Mich App 12, 19-20; 756 NW2d 234 (2008) (holding that a respondent's due-process rights are violated if DHHS "deliberately takes action with the purpose of virtually assuring the creation of a ground for termination of parental rights, and then proceeds to seek termination on that very ground") (quotation marks, citations, and alteration omitted).

Given respondent's failure to address his mental health and domestic violence issues as required by his case service plan, his failure to visit KHB for nearly a year, KHB's young age and need for permanency and stability, and the preference for adoption expressed by KHB's relative placement, the trial court did not clearly err by finding that it was in KHB's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Jane E. Markey
/s/ Brock A. Swartzle
/s/ Philip P. Mariani